UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x
In re VEECO INSTRUMENTS, INC.          :       MDL No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                  :
----------------------------------------------------x
----------------------------------------------------x
THIS DOCUMENT RELATES TO               :
ALL ACTIONS                            :
                                       :
                                       :
----------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING
VEECO'S INTERNAL INVESTIGATION**

# REDACTED

**(ORIGINAL UNREDACTED VERSION FILED UNDER SEAL PURSUANT
TO CONFIDENTIALITY ORDER DATED MAY 16, 2006)**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTS ................................................................................................................. 4

III.   ARGUMENT ....................................................................................................... 6

       A.    The Requested Documents Are Not Protected By The Attorney-Client
             Privilege .................................................................................................... 7

             1.    Defendants Waived Any Assertion of Attorney-Client Privilege
                   By Sharing the Requested Documents With E&Y  .................................... 7

             2.    Communications Between Defendants and Jefferson Wells Were Not
                   Conducted for the Purpose of Obtaining Legal Advice .............................. 8

       B.    The Requested Documents Are Not Protected By the Work Product Doctrine ... 10

             1.    The Requested Documents Were Not Prepared in Anticipation of
                   Litigation and Thus Are Not Protected by the Work Product Doctrine ... 10

             2.    Defendants Waived Any Assertion of Work Product Protection for
                   the Requested Documents as a Result of Veeco's Public Disclosures .... 13

       C.    Any Applicable Work Product Immunity Must Yield to Plaintiffs'
             Substantial Need for the Requested Documents ................................................. 15

IV.    CONCLUSION ................................................................................................. 16

i

# TABLE OF AUTHORITIES

**CASES**                                                                   Page(s)

*Binks Manufacturing Co. v. National Presto Industrial, Inc.*, 709 F.2d 1109 (7th Cir. 1983) .... 10

*Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610 (N.D.Ill. 2000) ........... 9, 13

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ............... 6

*Gramm v. Horsehead Industries, Inc.*, 1990 WL. 142404 (S.D.N.Y. Jan 25, 1990) ..................... 7

*Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49 (S.D.N.Y.1999) ................. 16

*International Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997) .............................................. 6

*In re Royal Ahold N.V. Sec. & ERISA Litigation*, 230 F.R.D. 433 (D. Md.2005) ........... 12, 14, 15

*In re Grand Jury Subpoena*, 599 F.2d 504 (2d. Cir. 1979) .......................................................... 7

*In re Horowitz*, 482 F.2d 72 (2d Cir. 1973) ............................................................................... 7

*In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982) ................................................................... 7

*In re Kidder, Peabody Sec. Litigation*, 168 F.R.D. 459 (S.D.N.Y. 1996) ............................ 11, 14

*In re Leslie Fay Cos. Sec. Litigation*, 161 F.R.D. 274 (S.D.N.Y. 1995) ......................... 10, 11, 12

*In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*,
    1997 WL 118369 (S.D.N.Y. Mar. 14, 1997) ................................................................. 11

*In re von Bulow*, 828 F.2d 94 (2d Cir.1987) ........................................................................... 14

*Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 (S.D. Cal. 2003) ........................................... 12, 14

*Magee v. Paul Revere Life Insurance Co.*, 172 F.R.D. 627 (E.D.N.Y. 1997) ............................ 11

*Mercator Corp. v. United States (In re Grand Jury Subpoenas Dated*
    *March 19, 2002 and August 2, 2002)*, 318 F.3d 379 (2d Cir.2002) ................................... 6

*National Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105
    (S.D.N.Y. 2000) ......................................................................................................... 16

*Ramsey v. NYP Holdings, Inc.*, 2002 WL. 1402055 (S.D.N.Y. June 27, 2002) ......................... 14

ii

*United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999) ...................................................... 8

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ............................................... 12

*United States v. Construction Prods. Research*, 73 F.3d 464 (2d Cir. 1996) .......................... 7, 12

*United States v. Kovel*, 296 F.2d 918 (2d Cir.1961) ............................................... 7, 8, 9

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................6

## FEDERAL RULES

Fed. R. Civ. P. 26(b)(3) ............................................................................................... 15

Fed. R. Civ. P. 37(a)(2)(A) ............................................................................................. 3

## OTHER AUTHORITY

6 *Moore's Federal Practice* § 26.70[6][c] (Matthew Bender 3d ed.1999) ................................... 14

## I.    INTRODUCTION

Plaintiffs submit this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 37(a), to compel Defendants Veeco Instruments, Inc. ("Veeco" or the "Company"), Edward H. Braun, John F. Rien, Jr., John P. Kiernan , and R. Michael Weiss (the "Individual Defendants") (collectively the "Defendants"), to produce certain documents responsive to Plaintiffs' First Request for Production of Documents Directed to All Defendants that Plaintiffs served on Defendants on April 6, 2006, over four months ago.  *See* Declaration of Jeffrey L. Osterwise ("Osterwise Decl.") at Ex. A.[1]

In this motion, Plaintiffs seek an Order compelling Defendants to produce all reports, workpapers, interview notes, memoranda, correspondence, and any other documents, electronic or otherwise, created or prepared by Veeco, Jefferson Wells International, Inc. ("Jefferson Wells"), Veeco's outside counsel Kaye Scholer LLP ("Kaye Scholer"), Veeco's outside auditor Ernst & Young, LLP ("E&Y"), or anyone else in connection with the investigation of TurboDisc accounting and the restatement of Veeco's financials for the first, second, and third quarters and first nine months of 2004, referenced in, *inter alia,* Veeco's February 11, 2005 and March 16, 2005 press releases (*see* Osterwise Decl. at Ex. B and C), and as requested in Plaintiffs' First Request for Production of Documents Directed to All Defendants, at Requests Nos. 7-10 (Osterwise Decl. at Ex. A) (the "Requested Documents").

Defendants have refused to produce the Requested Documents on the grounds of asserted privileges which, as discussed below, are not applicable in the case. Notwithstanding Defendants' assertion of privilege, the Requested Documents contain information relevant to the allegations in

---

[1]  The Osterwise Declaration and Exhibits thereto are attached to the unredacted version of this Memorandum.

Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint"), and are essential to Plaintiffs' ability to establish the elements of their claims; the non-production of the Requested Documents would severely disadvantage Plaintiffs' ability to prepare their case for the parties' upcoming mediation, currently scheduled to be held on October 11-12, 2006, or for trial, if necessary.

Defendants have not, and cannot, meet their burden to show that the work product doctrine or the attorney-client privilege is applicable in this case to shield the Requested Documents from production. The Requested Documents, regarding the internal investigation, were created for Veeco's self-described business purposes, including restating Veeco's prior financial statements, Veeco's desire to file its 2004 10-K on schedule, reassuring investors and preventing further erosion of investor confidence, and making extensive personnel and internal control changes. As a result, the work product doctrine does not apply to the Requested Documents because they were *not* created in anticipation of litigation. Further, any communications associated with these documents were not made for the purpose of obtaining legal advice; therefore the attorney-client privilege is not applicable. Even if litigation was on the horizon, the Company cannot assert that the Requested Documents were created because of such litigation where the business purposes listed above were the "driving force" behind the Company's internal investigation.

Assuming, *arguendo,* that either the attorney-client privilege or the work product doctrine can be applied to the Requested Documents, neither theory would shield the documents from production to Plaintiffs in this instance. Veeco has destroyed any possible attorney-client privilege related to these documents by failing to keep these communications confidential when the Company permitted its outside auditor, Ernst & Young, LLP ("E&Y"), to review the Requested Documents. Moreover, Defendants implicitly waived their right to assert work product privilege because they

disclosed the conclusions of Veeco's internal investigation to the public in order to further Veeco's own business purposes. The public-disclosure-as-waiver argument is consistent with Plaintiffs' position that the "driving force" behind the internal investigation was not this litigation but the need to assure the investing public that the identified "improper accounting transactions" and internal control issues at TurboDisc were being addressed and remedied, and that Veeco's restated and year-end financial statements could be completed and filed with the SEC, and its business could resume.

Finally, Plaintiffs can demonstrate both a substantial need for the Requested Documents and an undue burden, as required under Fed. R. Civ. P. 26, thus enabling Plaintiffs' to overcome Defendants' asserted work product protection.[2]

Plaintiffs have conferred in good faith with Defendants in effort to secure the Requested Documents without Court action in accordance with Fed. R. Civ. P. 37(a)(2)(A). However, a resolution could not be reached and Plaintiffs respectfully request the Court's assistance with this matter.[3]

---

[2] Plaintiffs also attempted , but were unable, to obtain the Requested Documents from two non-parties to this litigation by issuing subpoenas to Jefferson Wells and to Ernst & Young ("E&Y"), Defendants' outside auditor. Jefferson Wells responded, *inter alia*, that they could not produce the documents relating to the engagement without permission of Veeco or its attorneys, and that, in any event, they no longer possessed any copies of the reports. E&Y informed Plaintiffs that Defendants' counsel asserted privilege on a group of potentially responsive E&Y documents, and directed E&Y not to produce those documents, and that Defendants would forward a privilege log to Plaintiffs directly. In response to Plaintiffs' letter of August 2, 2006, Defendants produced the privilege log on August 4, 2006, which indicated that the withheld E&Y documents involved the internal investigation performed on behalf of the Audit Committee of Veeco's board.

[3] *See* Declaration of Phyllis M. Parker in of Compliance with F.R.Civ.P. 37(a) and Local Rule 37 in Support of Plaintiffs' Motion to Compel Production of Jefferson Wells Documents from Defendants, filed concurrently herewith.

## II.    FACTS

# REDACTED

On Feb. 11, 2005, Veeco announced in a press release that it would "postpone the release of audited results for the fourth quarter and full year 2004 pending completion of an internal investigation of improper accounting transactions at its TurboDisc(R) division." *See* Osterwise Decl. Ex. B. Regarding this investigation the press release also stated that "[t]he Audit Committee of the Company's Board of Directors ha[d] been supervising the accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP, to hire Jefferson Wells[4] to be actively involved in performing forensics work as part of the investigation." *Id.* The Company informed the public that it expected  that the investigation would "lead to adjustments requiring the restatement of the financial statements previously issued for the quarterly periods and nine months ended September 2004." Defendant Braun offered a statement, that was included in the press release, assuring investors that the Company had "taken prompt corrective action and [was] working diligently to

---

[4]

# REDACTED

4

finish the audit and report complete financial results in conjunction with [its] March filings." Veeco Chief Financial Officer Defendant Rein further explained in the press release that the "corrective" action undertaken to resolve the "accounting issue" included "making appropriate staffing changes and transitioning TurboDisc's accounting system to Veeco's SAP system." *Id.*

In a March 15, 2005 press release (*see* Osterwise Decl. Ex. F), Veeco announced to investors that it had completed its internal investigation and intended to file its 2004 Annual Report on Form 10-K on March 16, 2005. The following day the Company informed the public, via a press release, that it "announced its financial results for the fourth quarter and year-ended December 31, 2004, including the restatement of its nine month 2004 results." Osterwise Decl. Ex. C. As a part of the March 16, 2005 press release, Defendant Braun informed investors that the internal investigation and report of Jefferson Wells were complete and that the internal investigation had uncovered accounting adjustments requiring the restatement of financial statements previously issued for the three quarterly periods and nine months ended September 2004. Defendant Braun assured investors that the "improper accounting entries..were limited to a single Veeco business unit, TurboDisc, . . . and that [a]ctions ha[d] been taken to resolve these accounting issues, including the completion of an independent review, appropriate staffing changes, and transitioning TurboDisc to Veeco's SAP accounting system." *Id.* Further, Defendant Braun assured investors by noting that the Company was filing its Annual Report on Form 10-K "on time" and by noting the Company's commitment "to maintaining Veeco's long history of solid financial controls and reporting practices." *Id.* The Company included the March 16, 2005 press release in a Form 8-K filed with the SEC on March 16, 2005. *See* Osterwise Decl. Ex. C.

# REDACTED

REDACTED

REDACTED

### III.    ARGUMENT

"The discovery rules are to be given a broad and liberal construction." *Estee Lauder, Inc.*

*v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999). Further, the party invoking a

privilege bears the burden of establishing its applicability and "[t]he burden is a heavy one, because

privileges are neither 'lightly created nor expansively construed.'" *Mercator Corp. v. United States*

*(In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002)*, 318 F.3d 379, 384 (2d

Cir. 2002)(quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)) (citing *United States v.*

*International Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997) which held that when privilege

interferes with public's right to evidence, it must be "strictly confined within the narrowest possible

limits consistent with the logic of its principle"). As discussed below, Defendants have failed to,

6

and cannot, meet this burden with respect to the Requested Documents.

### A.    The Requested Documents Are Not Protected by the Attorney-Client Privilege

#### 1.    Defendants Waived Any Assertion of Attorney-Client Privilege by Sharing the Requested Documents With E&Y

Defendants lost any ability to withhold the Requested Documents by permitting E&Y to review the documents as a part of E&Y's annual audit engagement. "To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Construction Prods. Research,* 73 F.3d 464, 473 (2d Cir. 1996). *See also In re Horowitz,* 482 F.2d 72, 81 (2d Cir. 1973) ("We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege."); *accord Gramm v. Horsehead Industries, Inc.,* 1990 WL 142404, at *4 (S.D.N.Y. Jan 25, 1990). Courts recognize a waiver of the attorney-client privilege if the privileged communication is disclosed to accountants of the client, unless the transmission was for the purpose of enabling the accountants to assist the attorney in rendering legal services. *See, e.g., In re Horowitz, supra,* 482 F.2d at 81. *See also In re John Doe Corp.,* 675 F.2d 482, at 488 (2d Cir. 1982); *In re Grand Jury Subpoena, supra,* 599 F.2d at 504, 513 (2d Cir. 1979); *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961).

Even assuming that the Requested Documents are communications between Veeco and its attorney for the purpose of obtaining legal advice, Veeco cannot assert that it kept those communications confidential. **REDACTED**

# REDACTED

Clearly, E&Y was acting in the role of an accountant and auditor reviewing financial statement.

# REDACTED

Once these materials have lost their confidential nature, they cannot be shoved back into the "attorney-client privilege box".

### 2.   Communications Between Defendants and Jefferson Wells Were Not Conducted for the Purpose of Obtaining Legal Advice

The work of an accountant will only be protected by the attorney-client privilege where the accounting work is performed to help a client obtain legal advice from an attorney. Here, Veeco was motivated to engage Jefferson Wells for business purposes and Veeco's purported interest in legal advice appears to have been constructed to shield the Requested Documents from production to Plaintiffs.

Regarding the attorney-client privilege, the Second Circuit has long held that, that "[w]hat is vital to the privilege is that the communication [with an accountant] be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961); *see also United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)(noting, that in order to the preserve privilege, one must demonstrate that a third party was necessary to "translate or interpret information given" to an

8

attorney by his client).[5]  As Veeco itself stated, Jefferson Wells was retained to perform forensic accounting work as part of an investigation that was expected to lead to adjustments to earnings and a restatement of financial statements. *See, e.g.,* Veeco's February 11, 2005 press release. Osterwise Decl. Ex. B.  This is inherently accounting service and Veeco's actions support this conclusion.

Not only did the internal investigation result in a restatement of Veeco's financial statements, but, in addition, the investigation was essential to Veeco completing its year-end audit, in order to file its annual report on time.  Further, Veeco discussed this investigation in two significant press releases aimed, in part, at reassuring investors that Veeco's management was addressing its problems.  Veeco also used this investigation as the basis for several key personnel changes and adjustments to its internal controls.

Veeco's internal investigation, and the communications related to the investigation, were not conducted for the purpose of obtaining legal advice.  Rather, Veeco's primary motivation was to further its business purposes.  The Requested Documents do not, therefore, possess the properties required for their protection by the attorney-client privilege.  Further, the properties of these documents are immutable and cannot be transformed by passing the Requested Documents through Veeco's outside counsel, Kaye Scholer. *See Caremark, Inc. v. Affiliated Computer Services, Inc.,* 195 F.R.D. 610, 616 (N.D. Ill. 2000)(holding that an attorney cannot be used for the purposes of trying to create a screen against discovery where the content of the document indicates it is neither work product nor a communication subject to the attorney client privilege).

---

[5]  As the Court in *Kovel* explained: the "distinction has to be made if the [attorney-client] privilege is neither to be unduly expanded nor to become a trap" in cases involving accountants, given that there is no accountant-client privilege. *Kovel,* 296 F. 2d at 922.

**B.      The Requested Documents Are Not Protected by the Work Product Doctrine**

      **1.      The Requested Documents Were Not Prepared in Anticipation of Litigation and Thus Are Not Protected by the Work Product Doctrine**

As stated above, in conducting its internal audit, Veeco was trying to determine the source of its accounting improprieties, whether, and to what extent, the Company's financial statements should be restated and what personnel changes and new controls should be implemented.

# REDACTED

Further, the Company's press release announcing the investigation clearly demonstrates that the company was motivated to reassure investors that management could be trusted to protect investor interests. Veeco would have been compelled to conduct an internal investigation and would have created the Requested Documents in substantially the same form, given the important business interests at stake, even if Veeco management did not believe that litigation would ensue.

Indeed, under strikingly similar facts, this Court found that where reports to the Audit Committees of Boards of publicly held companies are prepared for business purposes, even when the reports are commissioned simultaneously with the company's defense of ongoing litigation, work product protection is not appropriate. As the court in *In re Leslie Fay Cos. Sec. Litig.,* 161 F.R.D. 274 (S.D.N.Y. 1995) explained:

> [T]he simple fact that the Company foresaw securities fraud litigation or that the SEC had initiated its own investigation prior to the Audit Committee's investigatory efforts does not automatically qualify the Audit Committee's investigation materials as work product. As the Seventh Circuit stated in *Binks Mfg. Co. v. Nat'l Presto*

10

> *Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983), a widely-recognized authority on
> the work-product doctrine: "The mere contingency that litigation may result is not
> determinative. If in connection with an accident or an event, a business entity in the
> ordinary course of business conducts an investigation for its own purposes, the
> resulting investigatory report is producible in civil pre-trial discovery . . . . The fact
> that a defendant anticipates the contingency of litigation resulting from an accident
> or event does not automatically qualify an 'in-house' report as work product."

*Id.* at 280. The *Leslie Fay* court continued: "we find that the Audit Committee, [counsel to the audit

committee], and [Arthur Andersen] conducted the internal investigation primarily for ***business

reasons***. Therefore, the ancillary existence of ongoing litigation does not shield their investigatory

documentation from discovery." *Id.* (emphasis added).[6]   Similarly, an investigative accountant's

interview notes are not protected by the work product doctrine, where the investigation materials

"were prepared primarily for business purposes," even though the investigation began amid

securities class action litigation. *In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*,

1997 WL 118369, at *2 (S.D.N.Y. Mar. 14, 1997).

  The same reasoning led to the same result in *In re Kidder Peabody Sec. Litig.*, 168 F.R.D.

459, 462-67 (S.D.N.Y. 1996) (investigative report by attorney, retained both to defend litigation and

to make recommendations for corporate reform, was not work product); *see also Magee v. Paul

Revere Life Ins. Co.*, 172 F.R.D. 627, 640 (E.D.N.Y. 1997) (a party asserting work product

immunity "must demonstrate 'that the documents were prepared principally or exclusively to assist

---

[6] In *Leslie Fay*, like in Veeco, the Audit Committee used the investigation and
subsequent report to make decisions on firing responsible personnel, to determine the
magnitude of the fraud, and implement new internal control systems, and to reassure that the
responsible parties had been rooted out. 161 F.R.D. at 280. The court rejected defendants'
argument that "once the accounting irregularities were publicly disclosed by the Company,
litigation against and on behalf of Leslie Fay could be reasonably anticipated." *Id.* Instead,
the finding that numerous business factors were present such that that the investigation was
not conducted "primarily in anticipation of litigation more nearly comports with the realities
surrounding the investigation," and waives work product protection. *Id.* at 281.

11

in anticipated or ongoing litigation'") (quoting *United States v. Construction Prods. Research*, 73 F.3d at 473).

While the court in *Adlman* stated that "[t]he fact that a document's purpose is business-related appears irrelevant to the question whether it should be protected" by the work product doctrine, the *Adlman* court was confronted with a vastly different form of a "business purpose." *United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998). In *Adlman*, the court set out to determine the applicability of the work product doctrine where the party's assessment of the outcome of expected litigation was used to evaluate whether not the party would undertake a business decision, specifically a reorganization. *Id.* at 1197. Here, Veeco's business purposes for undertaking its internal investigation, and the business decisions that resulted from the investigation, were not predicated on an analysis of an anticipated litigation. Further, the *Adlman* court explicitly stated that a document will be afforded work product protection where it "would not have been prepared in substantially similar form but for the prospect of that litigation." *Id.* at 1195; *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 435-36 (D. Md. 2005)(finding investigation memoranda were not created "because of" the prospect of litigation where the principal reason for their preparation was to satisfy outside accountants who required the memoranda to issue the company's audited financial statements, even though the company was "undoubtedly" also already preparing for class action litigation)(citing, *e.g., Leslie Fay*, 161 F.R.D. at 281)).

Veeco's reason for conducting the internal investigation is determinative. Veeco conducted its internal investigation and retained the services of Jefferson Wells for the business purposes discussed above, including for the preparation of its financial statements, to reassure investors and to make significant personnel and internal control changes. Veeco cannot transform work conducted for business purposes in work conducted because of anticipated litigation simply by having its

12

Audit Committee direct its outside counsel Kaye Scholer to hire Jefferson Wells to assist with the internal investigation. *See Caremark*, 195 F.R.D. at 616. Thus, neither the reports resulting from the internal investigation nor the materials generated in the course of these reports' preparation are protected by the work product immunity.

## 2.   Defendants Waived Any Assertion of Work Product Protection for the Requested Documents as a Result of Veeco's Public Disclosures

Rather than guard the results of its internal investigation from public view, Veeco affirmatively divulged, on multiple occasions, only aspects of its internal investigation that portray the Company and its investigation favorably.  For example, as a part of its March 16, 2006 press release, the Company announced to investors that it had completed its internal investigation and that conclusions reached during the investigation included that the improper accounting entries were made by a single individual at TurboDisc.  The press release also included an statement by CEO Braun reassuring investors that actions have been taken to resolve these issues.  Osterwise Decl. Ex. C.  Not surprisingly, this selective disclosure of the internal investigation created a positive impression of the Company following the investigation which is clearly seen in the article published March 18, 2005 on compoundsemiconductor.net titled, "Veeco accounts investigation reveals no fraud." Osterwise Decl. Ex. H.

Veeco not only shared selective results of its internal investigation with the public,

# REDACTED

Disclosure of elements of an investigation to the public is antithetical to a finding of work-product protection. *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, at * 11 (S.D.N.Y. June 27, 2002). In *Ramsey*, the court found that, to the extent that the party asserting work product protection had disclosed portions of a document--or at least its substance--the cannot withhold the balance of the document insofar as it concerns the same subject as the disclosed segment of the document. *Id.* The court in *Ramsey* also noted that a showing of selective disclosure, that is, revealing only favorable portions of documents, may form the basis for a broad subject-matter waiver. *Id.* (citing *In re von Bulow*, 828 F.2d 94, 103 (2d Cir.1987); *In re Kidder Peabody*, 168 F.R.D. at 472-73. *See also* 6 Moore's Federal Practice § 26.70[6][c] at 26-228 & n. 92 (Matthew Bender 3d ed.1999)).

In *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 513 (S.D. Cal. 2003), the court found that work product protection was not available where a party disclosed, on its website, certain facts contained in a document. The *Kintera* court reasoned that a party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of a document, noting that the party asserting work product protection was a sophisticated corporation, represented by experienced counsel, and that the disclosure was obviously intentional and, given the context of the disclosure on the party's website, the disclosure was clearly motivated by commercial concerns. *Id.*

Similarly, the court in *Royal Ahold Sec. & ERISA Litig.* found that public disclosure was grounds for waiver, and granted plaintiffs' motion to compel materials concerning interview notes and memoranda prepared by its *outside counsel* themselves as part of the company's internal investigation into accounting irregularities which plaintiff sought as relevant to their claim. The court stated that

14

> to the extent that Royal Ahold offensively has disclosed information pertaining to
> its internal investigation in order to improve its position with investors, financial
> institutions, and the regulatory agencies, it also implicitly has waived its right to
> assert work product privilege as to the underlying memoranda supporting its
> disclosures.

*Royal Ahold*, 230 F.R.D. at 437.[7]

Here, Veeco disclosed certain findings from its internal investigation. This disclosure was made, among other places, in the Company's March 16, 2005 press release; this was clearly motivated by commercial concerns. In addition, Veeco is a sophisticated corporation and was represented by experienced counsel. Further, given that Veeco chose to reveal select findings, in the context of a press release aimed at maintaining investor confidence in management, one can safely assume that Veeco only revealed "favorable" portions of its findings from the investigation. As such, Veeco has waived any possible work product protection for its internal investigation.[8]

### C. Any Applicable Work Product Immunity Must Yield to Plaintiffs' Substantial Need For the Requested Documents

Even if Defendants can establish that the Requested Documents should be afforded protection from discovery by the work product doctrine, Plaintiffs can demonstrate a substantial need for the Requested Documents and cannot obtain the substantial equivalent of those materials by other means. *See* Fed. R. Civ. P. 26(b)(3). A substantial need for documents can be shown to

---

[7] The court in *Royal Ahold* explained that the "public disclosure [waiver] argument is consistent with the [business purpose] position that the driving force behind the internal investigations was not this litigation but rather the need to satisfy Royal Ahold's accountants, and thereby the SEC, financial institutions and the investing public, that the identified 'accounting' issues were being addressed and remedied." 230 F.R.D. at 436.

[8] The Company repeatedly referred to these statements of the March 16, 2005 press release concerning the internal investigation, the hiring of Jefferson Wells, and the conclusions of the investigation in numerous public filings with the SEC, including Veeco's 2004 10-K, and the restated Forms 10-Q/A issued on April 1, 2005, and its Proxy Statement on Form 14A filed on April 28, 2005.

15

overcome work product protection where the documents are required in the preparation of the requesting party's case. *See National Congress for Puerto Rican Rights v. City of New York,* 194 F.R.D. 105, 110 (S.D.N.Y. 2000)(finding substantial need where information requested was directly probative on issues in this case); *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.,* 184 F.R.D. 49, 55-56 (S.D.N.Y. 1999)(substantial need for work product materials exists where the information sought is "essential" to a party's defense).

Plaintiffs have a substantial need for the Requested Documents in this case because Plaintiffs' claims are based on Veeco's restatement of the Company's financial statement. Since Veeco's financial statements have been restated, or materially revised, non-production of the documents created during the restatement process prevents Plaintiffs' assessment of the propriety of figures presented in Veeco's initially disseminated financial statements, the evidence supporting the material revisions thereto, and the justification for the figures set forth in the revised financial statements. These are the issues that are central to this litigation. As such, the Requested Documents are not merely relevant, rather they are essential to Plaintiffs preparation of their case.

Finally, the Requested Documents are not available, in a substantially similar form, from any other source. Plaintiffs have sought production of the Requested Documents from both E&Y and Jefferson Wells and have found that either the documents have been returned to Veeco or they have been withheld from production on privilege grounds. Even assuming Plaintiffs could reconstruct Veeco's investigation, Plaintiffs would still lack an understanding of Veeco's justifications for its initially disseminated financial statements as well as its justifications for the restatements.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel Defendants to produce all reports, workpapers, interview notes, memoranda,

correspondence, and any other documents, electronic or otherwise, created or prepared by Veeco, Jefferson Wells International, Inc., Veeco's outside counsel Kaye Scholer LLP, Veeco's outside auditor Ernst & Young, LLP, or anyone else in connection with the investigation of TurboDisc accounting and the restatement of Veeco's financials for the first, second, and third quarters and first nine months of 2004, referenced in, *inter alia*, Veeco's February 11, 2005 and March 16, 2005 press releases, and as requested in Plaintiffs' First Request for Production of Documents Directed to All Defendants, at Requests Nos. 7-10. In accordance with Federal Rule of Civil Procedure 37(a)(4), Plaintiffs request that the Court require that Defendants reimburse Plaintiffs for the reasonable expenses incurred in making this motion.

Respectfully Submitted,

DATED: August 21, 2006

BERGER & MONTAGUE, P.C.

By: _____

Sherrie R. Savett
Phyllis M. Parker
Jeffrey L. Osterwise
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

*Lead Counsel for Lead Plaintiff Steelworkers Pension Trust and The Class*

408592_02.wpd

17