## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.        :        Case No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                :
-------------------------------------------------- x
-------------------------------------------------- x
THIS DOCUMENT RELATES TO             :
ALL ACTIONS                          :
-------------------------------------------------- x
```

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFF'S SECOND AND THIRD MOTIONS *IN LIMINE*

**I.      INTRODUCTION**

During this litigation, Defendants have used the attorney-client communication and attorney-work-product privileges as a ***shield*** to prevent discovery by Plaintiffs of information about the investigation of improper accounting entries at Veeco's TurboDisc division, including the results of the investigation, as well as to prevent discovery of advice certain Defendants received from their counsel in assessing the accuracy and truthfulness of certifications they were required to make to investors under the Sarbanes-Oxley Act.

To ensure the jury is not misled and, correspondingly, that Plaintiffs are not prejudiced, Lead Plaintiff Steelworkers Pension Trust, on behalf of itself and the Class (collectively, "Plaintiffs"), hereby respectfully requests that the Court rule in advance of trial that defendants Veeco Instruments, Inc. ("Veeco" or "the Company"), Edward H. Braun, John F. Rein, Jr., and John P. Kiernan (collectively, "Defendants") may not also impermissibly use the attorney-client communication and attorney-work-product privileges as a ***sword*** against Plaintiffs by:

(a)      making affirmative claims about a belief regarding any issue that was addressed during the investigation of improper accounting practices at Veeco's TurboDisc division, including, but not limited to, the issue of TurboDisc's controller's state of mind at the time he engaged in the improper accounting practices (similarly, any

defense witness who had access to, or was otherwise informed of, the contents of the investigation materials, including the investigation's findings, should also be precluded from making affirmative claims at trial about a belief regarding any issue that was addressed during the investigation); and

(b)     asserting that defendants Braun and Rein believed in good faith that they were not violating the requirements of the Sarbanes-Oxley Act in issuing the Section 302 and 906 certifications in connection with Veeco's periodic reports for the first, second, and third quarters of 2004.

As discussed in greater detail below, it would be grossly unfair and prejudicial for Defendants to be permitted to assert claims to influence the jury after denying Plaintiffs access to information that may disprove or undermine the claims.

## II.     ARGUMENT

### A.     The Purpose of Motions *in Limine* and the Principle That Privileges May Not Be Used as a Shield During Discovery and Subsequently as a Sword at Trial.

The purpose of motions *in limine* is to allow trial courts to rule on the admissibility and relevance of certain forecasted evidence in advance of trial. *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001). Pursuant to Federal Rules of Evidence 402 and 403, courts have the authority "to rule, *in limine*, that certain evidence should be excluded, either because it is irrelevant, or if relevant, its probative value is substantially outweighed by considerations of prejudice and confusion." *United States Football League v. National Football League*, 634 F. Supp. 1155, 1165 (S.D.N.Y. 1986); *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (explaining that "[a]lthough the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (approving the practice). In ruling on a motion

*in limine*, a court may exclude evidence which is "clearly inadmissible on all potential grounds." *Paredes,* 176 F. Supp. 2d at 193.

This Court, the Second Circuit Court of Appeals as well as other federal courts across the United States have recognized that it would be fundamentally unfair for a litigant to be permitted to make an affirmative contention to a jury, while depriving an adversary of access to material that may disprove or undermine that contention. *See Grand Jury Proceedings v. United States,* 350 F.3d 299, 302-303 (2d Cir. 2003); *United States v. Bilzerian,* 926 F.2d 1285, 1293-94 (2d Cir. 1991); *Cox v. Administrator United States Steel & Carnegie,* 17 F.3d 1386, 1418-20 (11th Cir. 1994); *In re Adelphia Commun. Corp.,* No. 02-41729, 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007); *Granite Partners, L.P. v. Bear Stearns & Co.,* 184 F.R.D. 49, 54-55 (S.D.N.Y. 1999); *In re Broadcom Corp. Secs. Litig.,* 2005 U.S. Dist. LEXIS 44424, *7-11 (C.D. Cal. Feb. 10, 2005). This principle is commonly expressed in terms of the following proscription: privileges may not be used both as a shield and a sword. *Bilzerian,* 926 F.2d at 1292 (citing *In re von Bulow,* 828 F.2d 94, 103 (2d Cir. 1987)).

In *Bilzerian,* the defendant in a criminal securities trial filed a motion *in limine* seeking a ruling that he could testify regarding his belief in the lawfulness of his conduct without being subjected to cross-examination on communications he had with his attorney on the subject. *See* 926 F.2d at 1291. The district court directed that if the defendant testified regarding his good faith as to the lawfulness of his conduct, the door would be opened to cross-examination with respect to the basis for his belief and that inquiry into communications with his attorney would be permitted. *See id.* The defendant did not testify regarding his good faith and was convicted. The defendant subsequently appealed, arguing, among other things, that the district court's ruling prejudiced his

defense. *See id.* The Second Circuit held that the district court properly ruled that if the defendant had asserted his good faith attempt to comply with the securities laws –even if in doing so he would not have disclosed the content or even the existence of privileged communications with his attorney– **"the jury would be entitled to know the basis of his understanding that his actions were legal."** *Id.* at 1294 (emphasis added). The Second Circuit explained that its holding was based on the principle that "courts cannot sanction the use of the privilege to prevent effective cross-examination on matters reasonably related to those introduced in direct examination." *Id.* at 1293 (citing *McGautha v. California*, 402 U.S. 183, 215-17 (1971)); *accord Grand Jury Proceedings*, 350 F.3d at 303 (instructing that "unfairness" justifying forfeiture of the work product privilege "generally result[s] from a party's advancing a claim to a court or jury ... while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim.").

In *Cox*, the United Steel Workers of America union claimed U.S. Steel violated federal labor laws when, in the course of negotiating a collective bargaining agreement, the company secured concessions from union negotiators by granting the negotiators pension benefits from U.S. Steel to which they were not entitled. *See Cox*, 17 F.3d at 1393-94. U.S. Steel had to revise its leave-of-absence policy to pay the negotiators the promised pension benefits. *See id.* at 1394. Once the negotiators were brought within the coverage of the pension plan, U.S. Steel subsequently rescinded the change. *See id.* at 1418. U.S. Steel took the position that, at the time the revised leave-of-absence policy was implemented, it believed the policy was lawful. *See id.* The district court determined that, by asserting it "believed the policy to be lawful," U.S. Steel **"necessarily implicate[d] all of the information at its disposal when it made the decision** to change the leave

-4-

of absence policy and later, to rescind the change." *Id.* (emphasis added). Based on that determination, the district court further held that U.S. Steel had waived the attorney-client privilege with respect to communications about the policy changes, reasoning that "it would be inequitable to allow [U.S. Steel] to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law." *Id.* The Eleventh Circuit affirmed the district court's decision, holding that by "affirmatively asserting that it believed that its change in pension fund policy was legal" rather than merely denying criminal intent, "[U.S. Steel] injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege." *Id.* at 1419.

Based on the same principle recognized in *Bilzerian* and *Cox,* courts may preclude a litigant who invokes a privilege during discovery from testifying at trial about the matters that were earlier claimed to be privileged. *See Trouble v. Wet Seal, Inc.,* 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (finding defendant had waived the advice of counsel defense by using the attorney-client privilege to shield discovery of the advice received); *Columbia Pictures Indus., Inc. v. Krypton Broadcasting of Birmingham, Inc.,* 259 F.3d 1186, 1196 (9th Cir. 2001) (citing William A. Schwarzer, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, P11:37 at 11-29 (2000) (stating that "the court may fashion remedies to prevent surprise and unfairness to the party seeking discovery ... [such as] where the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged").

**B.    SECOND MOTION *IN LIMINE*:  Defendants and Their Witnesses Should Be Precluded from Making Affirmative Claims about a Belief Regarding Any Issue Addressed During the Investigation of TurboDisc, Including Whether the Division Controller Acted Fraudulently.**

Defendants should be precluded from making affirmative claims at trial about a belief regarding any issue that was addressed during Kaye Scholer LLP and accounting firm Jefferson Wells' investigation of improper accounting practices at Veeco's TurboDisc division, including, but not limited to, the issue of division controller Bruce Huff's state of mind at the time he engaged in the improper accounting practices.  Similarly, any defense witness who had access to, or was otherwise informed of, the contents of the investigation materials, including the investigation's findings, should also be precluded from making affirmative claims at trial about a belief regarding any issue that was addressed during the investigation.

In or around January 17, 2005, Veeco's Audit Committee authorized the special retention of outside securities counsel Kaye Scholer to conduct a purported investigation concerning potentially improper accounting entries relating to inventory assets at Veeco's TurboDisc division.  The Audit Committee further authorized Kaye Scholer to retain Jefferson Wells to purportedly assist its lawyers in reviewing and analyzing potentially improper accounting transactions at TurboDisc.

During discovery, Defendants repeatedly invoked the attorney-client communication and attorney-work-product privileges to shield from discovery by Plaintiffs any information about the investigation of TurboDisc, including the investigation's findings.  On August 21, 2006, Plaintiffs moved to compel the production of the documents created during the course of the investigation, including "all reports, workpapers, interview notes, memoranda, correspondence and any other documents ... created ... by Veeco, Jefferson Wells International, Inc., outside counsel Kaye Scholer

LLP, Veeco's outside auditor Ernst&Young LLP, or anyone else in connection with the investigation of TurboDisc accounting and the restatement of Veeco's financials ...." Plaintiffs contended that the documents do not constitute attorney-work-product and alternatively that, even if they do constitute protected work-product, Plaintiffs have demonstrated a substantial need for the materials and cannot obtain the information by other means. Magistrate Judge Yanthis denied Plaintiffs' motion on January 24, 2007. This Court denied Plaintiffs' motion to vacate and reverse Judge Yanthis' decision on March 9, 2007 and subsequently denied Plaintiffs' motion for reconsideration on April 4, 2007.

The principle recognized in *Bilzerian, Cox*, and their progeny is applicable here and should be imposed to preclude Defendants from making affirmative claims to the jury about a belief regarding any issue that was addressed during the investigation of improper accounting practices at Veeco's TurboDisc division because the findings from the investigation or investigation materials may disprove or undermine those contentions. For example, were Defendants to affirmatively contend that they do not believe TurboDisc controller Bruce Huff acted fraudulently, they would be putting the basis for their belief at issue. This assertion would make relevant all of the information available to Defendants when their belief was formed, including the results of –or any information uncovered by– the investigation. *See Bilzerian*, 926 F.2d at 1293-94; *Cox*, 17 F.3d at 1418-19. However, because Defendants shielded all information related to the investigation, if allowed to assert their belief regarding a matter addressed by the investigation to the jury, trial would have to be suspended so as to allow Plaintiffs full-discovery of the investigation. Otherwise, Plaintiffs would be denied the opportunity to effectively cross-examine Defendants and, correspondingly, the jury would not hear all information at the witness' disposal when the belief was formed, a well-

recognized prejudice. *See Bilzerian*, 926 F.2d at 1293-94; *Cox*, 17 F.3d at 1418-19. In addition to Defendants, any witness who either had access to the materials from the investigation or was advised of the investigation's findings should also be precluded from making affirmative claims to the jury about a belief regarding any issue that was addressed during the investigation. For instance, the Ernst&Young accountant who oversaw the audit of Veeco's 2004 financial statements, Steven Amato, testified during his deposition on May 17, 2007 that his belief regarding the TurboDisc controller's state of mind at the time he engaged in the improper accounting practices was influenced by the results of the investigation which he reviewed.

For these reasons, Defendants and any witness, who either had access to the materials from the investigation or was advised of the investigation's findings, should be precluded from making affirmative claims at trial about a belief regarding any issue that was the subject of the investigation of improper accounting practices at Veeco's TurboDisc division, including, but not limited to, the issue of TurboDisc controller Bruce Huff's state of mind at the time he engaged in improper accounting practices. *See Bilzerian*, 926 F.2d at 1293-94; *Cox*, 17 F.3d at 1418-19; *Wet Seal*, 179 F. Supp. 2d at 304; *Columbia Pictures*, 259 F.3d at 1196 (citing William A. Schwarzer, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, P11:37 at 11-29 (2000) (stating that "the court may fashion remedies to prevent surprise and unfairness to the party seeking discovery ... [such as] where the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged").

C.    **THIRD MOTION** *IN LIMINE*: **Defendants Should Be Precluded from Affirmatively Contending That They Believed in Good Faith They Were Not Violating the Requirements of Sarbanes-Oxley.**

Defendants should be precluded from asserting at trial that they believed in good faith that they were not violating the requirements of the Sarbanes-Oxley Act in issuing the Section 302 and 906 certifications in connection with Veeco's periodic reports for the first three quarters of 2004.

In connection with Veeco's periodic financial reports for the first three quarters of 2004 filed with the Securities and Exchange Commission, defendants Braun and Rein certified to investors that the two most senior executives, among other things, had:

    (a)    reviewed the periodic reports before filing them with the SEC and believed the reports (i) did not contain any material misrepresentations and (ii) fairly presented in all material respects Veeco's financial condition, results of operations, and cash flow;

    (b)    designed adequate disclosure controls and evaluated the effectiveness of the controls;

    (c)    disclosed in the report any change in internal controls that materially affected, or was reasonably likely to materially affect, internal controls over financial reporting;

    (d)    disclosed to Veeco's auditor and audit committee (i) all financial reporting control deficiencies reasonably likely to adversely affect Veeco's ability to record, process, summarize and report financial information, and (ii) any fraud, whether material or immaterial, the involved management or other employees who have a significant role in Veeco's internal control over financial reporting.

*See* Section 302 and 906 Sarbanes-Oxley Certifications by Defendants Braun and Rein dated May 3, 2004, Aug. 2, 2004, and Nov. 9, 2004. Plaintiffs claim, and believe the evidence shows, defendants Braun and Rein were aware at the time they signed each of the certifications that the certifications were materially false and misleading because they were aware of internal control deficiencies at Veeco's TurboDisc division which caused Veeco to report artificially inflated earnings. Indeed, in Veeco's 2004 annual report, Defendants acknowledged that "a deficiency

existed in the internal controls over financial reporting at the end of the [first, second and third] quarterly periods [of 2004]."

Defendants have shielded from discovery by Plaintiffs the advice and information defendants Braun and Rein received from counsel in assessing whether their Sarbanes-Oxley certifications were true and accurate.[1] As recognized in *Bilzerian,* if Defendants claim to the jury that they believed in good faith that their Sarbanes-Oxley certifications were true and accurate, to maintain fairness and avoid prejudice "the jury would be entitled to know the basis of his understanding that his actions were legal." *Bilzerian*, 926 F.2d at 1294 (affirming district court's ruling that were defendant to testify regarding his good faith as to the lawfulness of his conduct, the door would be opened to cross-examination with respect to the basis for his belief and that inquiry into communications with his attorney would be permitted); *accord Cox*, 17 F.3d at 1418 (affirming district court's holding that U.S. Steel "necessarily implicate[d] all of the information at its disposal when it made the decision" by asserting that it believed the decision was lawful). Because Defendants have shielded from discovery the advice and information received from counsel, the Court should rule that Defendants have consequently waived the good faith defense and are precluded from making any affirmative assertions to the jury that they believed in good faith that their Sarbanes-Oxley disclosures were lawful – *i.e.*, not false and misleading. *See Wet Seal*, 179 F. Supp. 2d at 304; *Columbia Pictures,*

---

[1] For example, Defendants' privilege log dated May 31, 2007 identifies a series of documents withheld on the ground that they were attorney-client communications. These documents, which have been numbered 482-501 and 511-512 on the privilege log, are dated shortly before defendants Braun's and Rein's Sarbanes-Oxley certifications in connection with the first quarter of 2004 periodic report and are described as being related to Veeco's compliance with Sarbanes-Oxley and Veeco's disclosure controls.

-10-

259 F.3d at 1196 (citing William A. Schwarzer, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, P11:37 at 11-29 (2000)).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preclude Defendants from asserting at trial (a) affirmative claims about a belief regarding any issue that was addressed during the investigation of improper accounting practices at Veeco's TurboDisc division, including, but not limited to, the issue of the division controller's state of mind at the time he engaged in the improper accounting practices (similarly any defense witness who had access to, or was otherwise informed of, the contents of the investigation materials, including the investigation's findings, should also be precluded from making affirmative claims at trial about a belief regarding any issue that was addressed during the investigation), and (b) that defendants Braun and Rein believed in good faith that they were not violating the requirements of the Sarbanes-Oxley Act in issuing the materially false and misleading Section 302 and 906 certifications in connection with Veeco's periodic reports for the first three quarters of 2004.

Dated:  June 6, 2007                    Respectfully submitted,

                                        BERGER & MONTAGUE, P.C.


                                        Sherrie R. Savett
                                        Carole A. Broderick
                                        Phyllis M. Parker
                                        Jeffrey L. Osterwise
                                        1622 Locust Street
                                        Philadelphia, PA 19103
                                        Telephone: (215) 875-3000
                                        Facsimile: (215) 875-4674
                                        *Lead Counsel for Lead Plaintiff Steelworkers
                                        Pension Trust and the Class*

416307.wpd