UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
In Re VEECO INSTRUMENTS, INC.,        :    05-MD-1695 (CM)
SECURITIES LITIGATION                  :
                                       :
———————————————————— x
THIS DOCUMENT RELATES TO:              :
                                       :
———————————————————— x
EDWARD J. HUNEKE, derivatively on behalf of : 05-CV-10224 (CM)
VEECO INSTRUMENTS, INC.,               :
                                       :
            Plaintiff(s),              :
                                       :
      vs.                              :
                                       :
EDWARD H. BRAUN, et al.,               :
                                       :
            Defendant(s),              :
———————————————————— x
AUGUST SCHUPP, III, derivatively on behalf of : 05-CV-10225 (CM)
VEECO INSTRUMENTS, INC.,               :
                                       :
            Plaintiff(s),              :
                                       :
      vs.                              :
                                       :
EDWARD H. BRAUN, et al.,               :
                                       :
            Defendant(s),              :
———————————————————— x
DAVID ALTMAN, derivatively on behalf of : 05-CV-10226 (CM)
VEECO INSTRUMENTS, INC.,               :
                                       :
            Plaintiff(s),              :
                                       :
      vs.                              :
                                       :
EDWARD H. BRAUN, et al.,               :
                                       :
            Defendant(s).              :
———————————————————— x

**COMPENDIUM OF UNPUBLISHED OPINIONS
CITED IN MEMORANDA IN SUPPORT OF FINAL SETTLEMENT
AND FEE APPLICATION**

# TABLE OF CONTENTS

**Cases**                                                                                    **Tab**

*Cope v. Reuter*,
    Case No. 6:06-CV-449-Orl-28DAB,
    Final Judgment & Order
    (M.D. Fla. Apr. 20, 2007) ........................................................................1

*In re Comverse Tech., Inc. Deriv. Litig.*,
    No. 601272/06, Slip op. (N.Y. Sup. Ct. Aug. 14, 2007) .........................2

*In re Intek Global Corp.*,
    C.A. No. 17207, Transcript,
    Strine, V.C. (Del. Ch. Apr. 24, 2000) .....................................................3

*Wandel v. Eisenberg*,
    No. 603665/06, Slip op. (N.Y. Sup. Ct. May 2, 2007) ...........................4

# TAB 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| KENNETH R. COPE, derivatively on behalf of Nominal Defendant Pain Care Holdings, Inc., | Case No. C:06-cv-449-Orl-28DAB |
| Plaintiff, | |
| v. | |
| MERRILL REUTER, RANDY LUBINSKY, MARK SZPORKA, RON RIEWOLD, JAY ROSEN, ARTHUR J. HUDSON, ROBERT FUSCO, THOMAS J. CRANE, and ALDO F. BERTI, | |
| Defendants, | |
| and | |
| PAINCARE HOLDINGS, INC., | |
| Nominal Defendant. | |

## [PROPOSED] FINAL JUDGMENT AND ORDER

This matter came on for hearing on April 20, 2007 (the "Settlement Hearing"), upon the application of the parties for approval, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, of the settlement in the Stipulation and Agreement of Compromise, Settlement and Release dated as of November 10, 2006 (the "Stipulation"). Due and adequate notice of said Settlement Hearing having been given in accordance with the Preliminary Order to the current PainCare shareholders that have continuously held PainCare common stock since on or before April 7, 2006, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing;

1

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    The form and manner of the notice given to the shareholders of PainCare is hereby determined to have been the best notice practicable under the circumstances and constitutes due and sufficient notice to all persons entitled to receive such notice in compliance with the provisions of Rule 23.1 of the Federal Rules of Civil Procedure, the requirements of due process, the United States Constitution and all other applicable law.

2.    The terms of settlement of this action, which are set out in the Stipulation, are fair, reasonable and adequate to PainCare, the nominal defendant on behalf of which this action was brought, and its stockholders.

3.    Accordingly, this Court approves the settlement and orders the parties to consummate the settlement in accordance with its terms as set forth in the Stipulation.

4.    This litigation is dismissed with prejudice as against all Defendants in full and final discharge of all claims contained in Plaintiff's Complaint herein, with each side to bear its own costs and expenses, except as set forth in paragraph 6 below.

5.    As set forth in the Stipulation, Plaintiff has agreed to the full, final, and forever compromise, discharge, release and dismissal with prejudice of any and all claims, rights, causes of action, suits, matters and issues, liquidated or non-liquidated, contingent or absolute, state law based, that have been, or could have been, or in the future could be asserted by PainCare, or derivatively by PainCare's stockholders, or the Plaintiff, derivatively in the right and on behalf of PainCare against any of the Defendants, including the Nominal Defendant, and/or any of their respective present or former directors, officers, agents, employees, attorneys, financial or investment advisors, investment bankers, insurance providers, counsel for insurance providers, consultants, accountants, representatives, affiliates, associates, parents, subsidiaries, general and

2

limited partners or partnerships, families, heirs, executors, trustees, personal representatives, estates or administrators, successors and assigns, or anyone else in connection with, or that arise out of, or relate to, any matter directly or indirectly involving any claim relating to the financial disclosures by the Company as set forth in the Complaint, including but not limited to the Restatement, including any claims for reimbursement, contribution or indemnification for any obligation of PainCare undertaken under this Stipulation, regardless of when PainCare is to perform or does perform such obligations, except (i) to enforce the terms or conditions of the Stipulation or (ii) with regard to matters specifically set forth in Schedule 1 attached to the Stipulation.

6.    Plaintiff's counsel are hereby awarded attorneys' fees in the amount of $ _500,000_ and expenses in the amount of $ _9,299_ .⁸⁸ in connection with this litigation, which sum the Court finds to be fair and reasonable and which will be paid by PainCare's directors and officers' liability carrier in accordance with the terms of the Stipulation.

7.    Jurisdiction is reserved over all matters related to the administration, consummation and enforcement of the terms of the Stipulation.

8.    In the event that the settlement does not become effective in accordance with the terms of the Stipulation, this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.



3

Dated: _Apr.l 2 0_____, 2007.

_____

HON. JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

4

# TAB 2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK : IAS PART 56**

-------------------------------------------------------------------------x

IN RE COMVERSE TECHNOLOGY, INC.
DERIVATIVE LITIGATION

Index No: 601272/06



**DECISION AND ORDER**

FILED

AUG 14 2007

NEW YORK
COUNTY CLERK'S OFFICE

-----------------------------------------------------------

**RICHARD B. LOWE III, J:**

Lead Plaintiffs Leonard Sollins and Timothy Hill (collectively, "the Lead Plaintiffs") bring

the instant derivative action on behalf of Nominal Defendant Comverse Technology, Inc ("CTI")

against its Board of Directors for breaches of fiduciary duty pertaining to stock-option backdating.

The derivative suit is also brought against Deloitte & Touche LLP ("D&I"), CTI's independent

auditor, for breach of fiduciary duty; malpractice; breach of contract; and negligent

misrepresentation. In the instant motion, CTI moves for dismissal pursuant to CPLR 3211(a)(3),

CPLR 3211(a)(7), and BCL § 626( c) because the Lead Plaintiffs failed to make a demand on the

Board. The Lead Plaintiffs contend that demand would be futile and is therefore excused. [1]

## BACKGROUND

CTI is organized under New York law, with its principal place of business here. It is a

provider of software, systems, and related services for multimedia communications and information-

---

[1] CTI does not proffer any arguments in support of its dismissal pursuant to CPLR 3211(a)(3). Accordingly, this Court will only analyze the motion under CPLR 3211(a)(7) and BCL § 626( c).

1

processing applications.

On March 18, 2006, the *Wall Street Journal* ("*WSJ*") published an article entitled "The Perfect Payday"that discussed the stock-option-granting practices of several publicly-traded companies, including CTI. Stock options are frequently part of the employee's compensation package, and give recipients the right to buy stock at a set price, called the exercise price or strike price. The strike price is the stock's 4pm price on the day the option-right is granted, the average price on that date, or the prior day's 4pm price. The ability to exercise the right, and purchase the stock at the pre-determined price, does not vest until a year or so after the date on which the right is granted.

The *WSJ* article examined a pattern among several publicly-traded companies where the option-grant date was one on which the company's stock traded at a low price. High-level employees would exercise their right on a day, a year-plus later, when the stock traded at a higher price. Accordingly, she/he was able to purchase the company's stock at a price lower than the then-current-asking price. In turn, he/she would sell the stock at the then-market and higher price, obtaining a profit. The article suggested that it was not simply by chance that these companies granted stock options on dates that its stock traded on the spectrum's lower-end. Rather, it reported that the U.S. Securities and Exchange Commission suggested that these companies backdated their option-grant dates: Instead of the stock's price on the date the option was granted, companies would review its historical stock pricing, and select a date where it traded at a low price. This would guarantee a windfall when the executive exercised her/his right on the later date.

Backdating option grants is considered egregious. First, companies grant stock options pursuant to shareholder-approved plans. The plans typically state that options will carry the price of

2

the day on which they are granted. If another, earlier date is actually used, the company could be liable for securities fraud. Second, options priced below the stock's fair market value could raise accounting issues because this awards the recipient an instant paper gain. Under accounting rules, this is equivalent to extra compensation, which is a cost to the company. A company that does not reflect this in its financial statements may overstate its profits.

As a result of the article, CTI's Board of Directors formed a Special Committee to investigate their company's stock-option-granting practices. The Board at this time consisted of insiders CEO Jacob "Kobi" Alexander ("Alexander"), General Counsel William Sorin ("Sorin"), Vice-President Itsik Danzinger ("Danzinger"), and outsiders John Friedman ("Friedman"), Sam Oolie ("Oolie"), Ron Hiram ("Hiram"), and Roz Alon ("Alon"). The latter two comprised the Special Committee. Alexander initially opposed the Special Committee's formation.

The Special Committee directed their examination towards the Stock Option and Remuneration Committee, which was later renamed the Compensation Committee; this is the group charged with overseeing employee compensation. It consisted of Friedman, Oolie, Hiram, and Shaula Yemini. [2]

In a March 16, 2006 interview, Alexander admitted to the Special Committee that option grants were backdated. In a subsequent interview, CFO David Kreinberg ("Kreinberg") confessed that he and Alexander concocted a scheme whereby they examined the company's historical stock pricing, and chose dates where CTI's stock traded at a low price as the option-granting dates, rather than the date on which the option was actually granted. Sorin acknowledged on March 23, 2006 that he drafted unanimous consent forms for the Compensation Committee's member to approve the

---

[2] Yemini is an outsider, and Alexander's sister.

option-grant dates selected by Alexander and Kreinberg, which were backdated. These forms, however, did not contain the dates; the section for the option-grant date was left blank. Both the SEC's complaint and the Lead Plaintiff's complaint alleged that Alexander, Kreinberg, and Sorin concealed their plan from the Committee. (*Fraser Aff'd, Ex 6, ¶ 55-56; Notice of Motion, Ex 1, ¶ 112, 114, 115*) Nevertheless, the members signed the Sorin-drafted forms.

The Lead Plaintiffs commenced the instant derivative action on April 11, 2006. They summarily allege that CTI's executives, some intentionally and others recklessly, caused the company to engage in the scheme to backdate the stock-option grants. While the complaint does not allege a monetary amount in which CTI was damaged, Lead Plaintiff's counsel averred during oral argument on June 12, 2007 that the then-current estimate was over $350 million. (*See, Transcript at page 15, line 20*) The Lead Plaintiffs did not make a demand on the Board prior to instant action's commencement, allegedly due to the demand's futility.

CTI announced on April 17, 2006 that it needed to restate its net income and earnings per share from 1990-2002. Due to the backdating scheme, these financial statements were "materially overstated" during that period. On May 1, 2006, the company terminated Alexander, Kreinberg, and Sorin, but retained them as advisors.

The U.S. Securities and Exchange Commission filed civil charges against Alexander, Kreinberg, and Sorin on August 9, 2006. The complaint alleges that these executives made material misrepresentations to investors regarding CTI's stock-option grants, and concealed from them that it had no recorded expenses in connection with the option grants. Also on that date, the U.S. Attorney's Office for the Eastern District of New York filed criminal charges against the same defendants. They were charged with conspiracy to violate the federal securities laws' anti-fraud

4

provisions, wire fraud, and mail fraud by engaging in the same scheme. The criminal violations require restitution, which the U.S. government estimates to be $51 million. Shortly after the SEC and the U.S. Government brought the charges, CTI terminated all agreements with the trio, and severed any remaining ties with them.

In the instant motion, Nominal Defendant CTI moves to dismiss the instant derivative action pursuant to CPLR 3211(a)(3), 3211(a)(7), and BCL § 626( c) for the Lead Plaintiff's failure to make a demand on the Board and for their failure to plead with particularity the reasons for its futility. The Lead Plaintiffs oppose the motion.

## DISCUSSION

"A party may move for judgment dismissing one or more causes of action asserted against him on the grounds that the pleading fails to state a cause of action. . ." (*CPLR 3211(a)(7)*) In a motion to dismiss, the court takes the facts as alleged in the complaint as true and accords the benefit of every possible favorable inference to the non-movant (*see AG Capital Funding Partners, LP v State Street Bank and Trust Co,* 5 NY 3d 582 [2005]). "The sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law, a motion for dismissal will fail." (*Ackerman v 204 East 40th Owners Corp.,* 189 AD 2d 665 [1st Dept 1993].)

Under New York law, a corporation's shareholder who believes that a wrong was committed against the corporation that deserves legal redress must make a demand upon its board of directors for the latter to commence such an action. (*See, Eos Partners BSIC, LP ex rel. DDS Partners, LLC v Levine,* 2007 WL 1932823 [1st Dept].) If said shareholder commences an action herself/himself, "the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of

5

such action by the board or the reasons for not making such effort." (*NY BCL § 626( c)*)

Nominal Defendant CTI avers that the Lead Plaintiffs fail to plead with specificity the reasons for the demand's futility. Accordingly, they move for the complaint's dismissal. In order for the Lead Plaintiffs to survive the motion to dismiss, their complaint must allege with particularity that at the time the instant action was commenced "(1) a majority of the directors are interested in the transaction; (2) the directors failed to inform themselves to a degree reasonably necessary about the transaction; or (3) the directors failed to exercise their business judgment in approving the transaction." (*Marx v Akers,* 88 NY2d 189 [1996].) The Court of Appeals-articulated test is in the disjunctive; therefore, the Lead Plaintiffs only need to satisfy one of its prongs in order to survive the instant motion.

### *The Majority of the Board Members' Interest/Disinterest*

Under New York law, a director may be deemed interested under two scenarios: A self-interest in the transaction at issue, or a loss of independence because the disinterested director is controlled by the interested one(s). (*See, Bansbach v Zinn,* 1 NY 3d 1 [2003].) Here, the examination is focused on CTI's Board of Directors, and whether the Lead Plaintiffs plead that a majority of the board's members were interested in backdating option grants.

At the relevant time, the Board consisted of Alexander, Sorin, Danzinger, Friedman, Oolie, Hiram, and Alon. It is undisputed that Alexander and Sorin, by their own admission, orchestrated the scheme. However, the Lead Plaintiffs do not allege that the remaining five directors conspired with Alexander and Sorin to perpetrate the scheme. Rather, they allege a series of "conclusory allegations of wrongdoing [that] do not suffice to excuse the pre-litigation demand." (*Miller v Schreyer,* 257 AD 2d 358 [1ˢᵗ Dept 1999].)

6

First, there are a number of allegations contained in the complaint that relate to backdated-option grants and selling CTI stock. Here, the Lead Plaintiffs plead

> Demand is futile because a majority of CTI Board of Directors at the time this suit was commenced participated in, approved of, or benefitted from many of the acts and omissions or were on notice or and/or recklessly disregarded the wrongs complained of herein. . .

(*Complaint at page 93, ¶ 208*)

> Defendants Alexander, Sorin, and Danzinger received backdated options from CTI. . . [and]. . .profited off their later exercise and sale of these shares

(*Id, ¶ 208(a)*)

> [I]t is likely that every member of the CTI board of directors, except for Director Alon, who joined the CTI Board of Directors in 2003, holds backdated options. . .

(*Id at page 94, ¶ 208( c)*)

> Defendants Alexander, Danzinger, Friedman, Hiram, Oolie, and Sorin personally profited from the unauthorized disclosure and illicit backdating scheme by selling their CTI shares during the relevant period for substantial profits. . .

(*Id, ¶ 208(d)*)

The Lead Plaintiffs plead that Vice President/insider Danzinger received backdated options. But this is void of any allegation that he acquiesced to the Alexander-Sorin-Kreinburg scheme, either by colluding with them or accepting their conspiracy's benefit. They allege that "it is likely" that every board member, including the outsiders, received backdated options grants. However, there is no pleading that they *actually* did receive said grants. Even if the complaint did contain such a pleading, that in and of itself would not satisfy the demand-futility requirement. Indeed, there is no wrongdoing in receiving the grants; the nefariousness is when the recipient had knowledge of and consented to the scheme. The allegation that certain outside Board members sold their stock and profited from said sale fails on similar grounds.

Second, the Lead Plaintiffs assert a series of allegations referring to long-standing relationships between Alexander and the outside directors. They plead

> Defendants Hiram and Director Alon were employed by Lehman Brothers before joining
> the CTI Board of Directors. Lehman Brothers provides investment banking services to
> CTI. . .Accordingly, [they] are not independent. . .

(*Id, ¶ 208(f)*)

> Defendant Hiram was appointed director of System Management ARTS, Inc. . .which
> was founded by Defendants S. Yemini and Y. Yemini in 1993. At the same time [Hiram]
> was a director [there], Defendant Alexander [served as its chairman]. . .

(*Id, ¶ 208(g)*)

> Former employees of CTI confirm that defendant Alexander had complete control of
> CTI and its board of directors. . .

(*Id, ¶ 209(h) & (I)*)

The pleading attempts to demonstrate that because of these affiliations, Alexander exercised control over them to the point that they were interested, making demand upon them futile. But aside from the inter-personal connections, the complaint does not contain a particularized pleading as to how Alexander controlled these two outside directors to the extent that their will in participating in the Board's duties was not their own. Mere conclusory allegations that an interested director controls a disinterested director are insufficient. (*See, In re Woolworth Corp Shareholders Derivative Litigation,* 240 AD 189 [1st Dept 1997].)

CTI's Board of Directors contained seven members at the time the Lead Plaintiffs commenced the instant action. The complaint only sufficiently pleads that two directors, Alexander and Sorin, perpetrated the scheme. The allegations against the third inside director, Danzinger, and the four outside directors are conclusory. Accordingly, a majority were disinterested and this prong of the Marx test was not satisfied.

### *The Director's Failure to Inform Themselves/The Exercise of Sound Business Judgment*

The second and third prongs involve the same factual analysis, and will be reviewed concurrently. Here, the Compensation Committee was charged with reviewing CTI's stock option

8

grants. While demand is to be made on the Board of Directors and not one of its delegated offshoots,

the Compensation Committee's majority members were Board members (i.e., Friedman, Oolie, and

Hiram). Since these were the Board members who approved the improper backdating, this Court

must determine if demand upon them was futile.

> Here, the Lead Plaintiffs plead

> Even after the news concerning CTI's backdating of options and following the initiation
> of the suit, CTI failed to immediately take any action against Alexander, Kreinberg, and
> Sorin. [I]t was not until May 1, 2006 that [they] resigned from their management
> positions. Despite their wrongdoing, however, the Company still maintained a
> relationship with them. . .

(*Id at page 97, ¶ 208(I)*)

> Three members of the CTI [Board], defendants Friedman, Hiram, and Oolie, were
> members of the Compensation Committee. . .the members of [this committee] had
> actual knowledge of and/or were reckless in ignoring the backdating of stock options
> and knowingly and/or recklessly approved and participated in the backdating.

(*Id at page 98, ¶ 209(a)*)

> The derelictions of duty by the Compensation Committee. . .demonstrate that [its]
> members, including Friedman, Hiram, and Oolie, knew of, or at best failed to fully
> inform themselves to the  extent reasonable. . .about [t]he granting of backdated options.
> A pre-suit demand made upon Friedman, Hiram, and Oolie would have therefore have
> been futile.

(*Id at page 108, ¶ 209(g)*)

> Demand is also futile because the backdating of options was so egregious on its face
> that it could not have been the product of sound business judgment of the directors. . .

(*Id at page 109, ¶ 210*)


Summarily, the complaint contains the allegation that Friedman, Oolie, and Hiram failed to fully

inform themselves about the option grants. This comports with Sorin's admission that he drafted

consent forms and the Compensation Committee signed off on these, without reviewing or

investigating the dates chosen and to whom the options were given. "[Directors do] not exempt

[themselves] from liability [when they fail] to do more than passively rubber-stamp the decisions

9

of the active managers." (*Marx, supra*) While Alexander and Sorin may have concealed their scheme from their fellow Board members/Compensation Committee, this does not negate the fact that they later neglected the duties they assumed when they joined the Board. They did not inform themselves of this scheme, and because they failed in that, the business judgment rule cannot protect their inaction. They essentially signed blank checks to Alexander, Kreinberg, and Sorin and allowed the trio to make determinations regarding option-grant dates without consultation or inquiry.

But, as the Lead Plaintiffs acknowledge, demand futility must be examined "at the time the complaint was filed." (*See, Miller, supra*). Here, the complaint was filed April 11, 2007, approximately a month after the Board learned about the questionable practices. By this time, the Board, including Danzinger, Friedman, Oolie, and Hiram already authorized the Special Committee's formation to investigate the allegations, and secured admissions by Board Members and Officers Alexander and Sorin. This demonstrates that demand on the Board was not futile because the Board clearly was willing to investigate when the allegations of potential wrongdoing emerged. It is of no matter the method in which the Board learned about the possible backdating (e.g., from the *WSJ*) or when the scheme's perpetrators were actually severed from CTI (e.g., after the instant action was filed as well as that of the SEC and DOJ). What does matter is the Board's state at the time of the instant action's commencement, and said state was one of investigator.

The Lead Plaintiffs fail to plead that the majority of the Board members were interested in the option-grant backdating scheme, whether by actual interest or by a loss of independence. They do, however, plead that the disinterested directors failed to adequately inform themselves about the plot. But timing is critical. At the time the instant action was commenced, the same Board who may have neglected their duties apparently rectified it by commencing an internal investigation in the

10

allegations asserted by the *WSJ*. Accordingly, demand would not have been futile at that time. The motion to dismiss the complaint is granted.

## **CONCLUSION**

For the forgoing reasons, it is hereby

ORDERED that the motion to dismiss is granted, and the Clerk of the court is directed to enter judgment in favor of CTI, dismissing the complaint as against it, with costs and disbursements to Plaintiffs as taxed by the Clerk.

This shall constitute this Court's decision and order.

**Date:** August 7, 2007

**Enter**

RICHARD B. LOWE III
_____
Richard B. Lowe III, J.S.C.



FILED

AUG 14 2007

NEW YORK
COUNTY CLERK'S OFFICE

11