UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re VEECO INSTRUMENTS, INC., SECURITIES LITIGATION | : | 05-MD-1695 (CM) |
| THIS DOCUMENT RELATES TO: | : | |
| EDWARD J. HUNEKE, derivatively on behalf of VEECO INSTRUMENTS, INC., | : | 05-CV-10224 (CM) |
| Plaintiff(s), | : | |
| vs. | : | |
| EDWARD H. BRAUN, et al., | : | |
| Defendant(s), | : | |
| AUGUST SCHUPP, III, derivatively on behalf of VEECO INSTRUMENTS, INC., | : | 05-CV-10225 (CM) |
| Plaintiff(s), | : | |
| vs. | : | |
| EDWARD H. BRAUN, et al., | : | |
| Defendant(s), | : | |
| DAVID ALTMAN, derivatively on behalf of VEECO INSTRUMENTS, INC., | : | 05-CV-10226 (CM) |
| Plaintiff(s), | : | |
| vs. | : | |
| EDWARD H. BRAUN, et al., | : | |
| Defendant(s). | : | |

**DECLARATION OF ROBERT B. WEISER IN SUPPORT OF
FINAL SETTLEMENT APPROVAL**

I, Robert B. Weiser, declare pursuant to 28 U.S.C. § 1746, as follows:

1. I am one of the founding principals of The Weiser Law Firm, P.C. (the "Weiser Firm"), one of plaintiffs' counsel in the above-captioned action (the "Action"), and I am fully familiar with all phases of the prosecution and settlement of the Action. I submit this Declaration in Support of Plaintiffs' Motion for Final Approval of Settlement and Award of Attorney's Fees Memoranda in support of the settlement and fee application are being filed contemporaneously herewith.

2. My firm resume is attached hereto as Exhibit 1. As it reflects, the Weiser Firm's practice is devoted to representing stockholders and employees in stockholder class, derivative and ERISA actions. In particular, I have devoted a significant amount of my professional career to prosecuting claims in stockholder derivative actions, and I have been involved in some of the most successful derivative actions in history, as Exhibit 1 reflects.

3. Collectively, from inception of the Action to date, the Weiser Firm has spent a total of 831 hours prosecuting the Action for a cumulative total "lodestar" of $367,175.00 as follows:

| **Attorney** | **Hours** | **Billing Rate** | **Total Time** |
|---|---|---|---|
| Robert B. Weiser | 485.5 | $525 | $254,887.50 |
| Brett D. Stecker | 345.5 | $325 | $112,287.50 |
| **TOTAL** | **831** | | **$367,175.00** |

4. The time the Weiser Firm spent prosecuting the Action, which is summarized above, is reflected in the detailed time records of the Weiser Firm, which are available for the Court's inspection upon request. The hourly rates described above are rates the Weiser Firm charges in all litigation.

5. The lodestar referenced above reflects that the Weiser Firm devoted a substantial

amount of time to prosecute the Action. Among other things, the Weiser Firm: (a) drafted various pleadings; (b) researched issues associated with Defendants' motion to dismiss the Action and assisted in the drafting of Plaintiffs opposition to Defendants' motion; (c) researched issues associated with the Company's historical option granting practices; (d) reviewed thousands of pages of documents and deposition transcripts; (e) took depositions; (f) worked on various issues with Plaintiffs' corporate governance expert; (g) participated in pre-trial preparation, including, but not limited to, drafting the Plaintiffs' proposed pre-trial order; (h) participated in settlement negotiations (including mediation); and (i) drafted settlement proposals and settlement documents.

6. Collectively, from inception of the Action to date, the Weiser Firm has incurred un-reimbursed expenses in the amount of $26,072.00 as follows:

| **Activity** | **Amount** |
|---|---|
| Travel, Food & Lodging | $1,323.25 |
| Photocopying | $650.00 |
| Telephone & Fax | $125.50 |
| Postage, Messenger, Courier & Federal Express | $23.54 |
| Lexis, Westlaw, Dow Jones, Bloomberg research | $3,950.00 |
| Litigation Funding | $20,000.00 |
| **Total** | **$26,072.00** |

7. All of the expenses incurred by the Weiser Firm, which are summarized above, are reflected in the books and records of the Weiser Firm, which are available for the Court's review upon request. These expenses were reasonably and necessarily incurred in connection with the prosecution of the Action.

8. I believe that the Settlement is an excellent result for the Company under the circumstances and that is easily merits the Court's Final Approval. I also believe that the Fee Award is fair and reasonable under precedent, and that it should receive the Court's Final

Approval.

_____
ROBERT B. WEISER

# Exhibit 1

# THE WEISER LAW FIRM, P.C.

## A NATIONAL SHAREHOLDER LITIGATION FIRM DEDICATED TO PROTECTING INDIVIDUAL AND INSTITUTIONAL SHAREHOLDERS' INTERESTS AND PROMOTING IMPROVED CORPORate GOVERNANCE PRACTICES

### *FIRM BIOGRAPHY*

The Weiser Law Firm, P.C., a national shareholder litigation firm, was founded by its two principals, Patricia C. Weiser and Robert B. Weiser, in December, 2004. Prior to December, 2004, Ms. Weiser and Mr. Weiser had both managed litigation groups at one of the nation's largest shareholder litigation firms. The Weiser Law Firm is devoted to protecting the interests of individual and institutional investors in shareholder class, derivative and ERISA actions in state and federal courts nationwide. The attorneys at the Weiser Law Firm devote a large percentage of their time to addressing complex corporate governance issues.

### PATRICIA C. WEISER

Ms. Weiser, a founding member of the firm, received her law degree from the Widener University School of Law in Wilmington, Delaware. While in law school, she served as an intern for the Honorable Clarence J. Newcomer, U.S.D.J. for the Eastern District of Pennsylvania. She is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the Eastern District of Michigan.

Ms. Weiser's practice is focused on shareholder class action litigation challenging management misconduct in connection with corporate takeovers and disputed contests for

corporate control. Ms. Weiser participated as lead or co-lead counsel in the following notable cases:

> *In re Storage USA Shareholder Litigation (Shelby County Chancery Court, Tennessee)*, in which Class Counsel were solely responsible for an aggregate financial benefit to the class of $10.5 million in connection with the acquisition of the company by its controlling shareholder;
>
> *In re Cox Communications Shareholder Litigation (Delaware Chancery Court)*, in connection with the acquisition of the company by its controlling shareholder, Cox Enterprises, Class Counsel shared responsibility for the agreement by Cox Enterprises to condition the transaction on the approval of a majority of the company's minority shareholders and to increase the consideration offered in the transaction by approximately $675 million;
>
> *In re Sodexho Marriot Shareholders Litigation (Delaware Chancery Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $166 million for members of the class, in connection with the acquisition of the company by its controlling shareholder, Sodexho Alliance, S.A.;
>
> *In re Travelocity.com Shareholder Litigation, (Delaware Chancery Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $75 million for members of the class, in connection with the acquisition of the company by its controlling shareholder, Sabre Holdings;
>
> *In re Delhaize America Shareholder Litigation (North Carolina Business Court)*, in which Class Counsel shared responsibility for creating an aggregate financial benefit of approximately $225 million for the members of the class in connection with the acquisition of the company by it controlling shareholder; and
>
> *Lieb, et al. v. Unocal Corporation, et al. (Los Angeles Superior Court)*, in which Class Counsel shared responsibility for creating a $500 million benefit via the increased consideration paid by Chevron Corp. to Unocal shareholders in the merger. In addition, Co-Lead Counsel caused defendants to issue important additional disclosures relating to the proposed merger with Chevron prior to the shareholder vote on the merger.

Ms. Weiser was also part of the litigation team that won an injunction in the seminal Delaware Chancery Court case *In re Pure Resources Shareholder Litigation*, forcing changes to certain terms of the proposed transaction as well as the public disclosure of significant additional

information concerning the transaction, and, ultimately being partially responsible for an aggregate financial benefit of approximately $41 million for the shareholder class.

## ROBERT B. WEISER

Mr. Weiser, a founding member of the firm, received his law degree from the Villanova University School of Law. While in law school, he also served as a law clerk for the Honorable Clarence J. Newcomer, U.S.D.J. for the Eastern District of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Weiser's practice is focused on shareholder derivative litigation and ERISA class action litigation. Mr. Weiser has been involved in some of the most successful shareholder derivative actions in history. While employed at his prior firm, Mr. Weiser managed the firm's shareholder derivative litigation practice, with a particular focus on corporate governance matters. Some of the notable cases in which Mr. Weiser has served as lead or co-lead counsel include:

> *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003). Mr. Weiser was co-lead counsel in the Oracle action. In that case, plaintiffs challenged certain multi-million dollar stock sales made by Oracle's senior officers, including Larry Ellison, Oracle's founder. Oracle's board of directors appointed a "special litigation committee" to investigate plaintiffs' claims, and after a lengthy investigation, the committee moved to dismiss the case, having concluded that plaintiffs' claims lacked merit. Among other things, plaintiffs' challenged the independence of the committee members, their good faith, and their ultimate conclusion. The court denied the committee's motion, which allowed the action to proceed to trial. The Oracle decision is one of four reported Delaware cases where a special litigations committee's motion to dismiss was denied by a Delaware chancellor and many commentators view the Oracle case as a landmark decision for shareholders. For example, the *Wall Street Journal* called the seminal decision "one of the most far-reaching ever on corporate governance." This case eventually settled for $100 million. Mr. Weiser believes that the $100 million recovery is the second largest derivative settlement ever. The Oracle case, and its impact on corporate governance matters nationwide, is the subject of numerous scholarly articles and treatises.

*David, et al., v. Wolfen, et al.*, Lead Case No. 01-CC-03930 (the "Broadcom Derivative Action"). Mr. Weiser was co-lead counsel in the Broadcom Derivative Action. Like the Oracle case, the Broadcom Derivative Action was also produced a ground-breaking settlement. In connection with the eventual settlement of the Broadcom Derivative Action, plaintiffs were able to compel Broadcom to make sweeping, substantial changes to its corporate governance practices which included a provision which allows Broadcom's shareholders to nominate directors to Broadcom's Board. In particular, the shareholder-nominated director provision was thought to be a highly significant and unusual achievement for Broadcom's shareholders. As the *Associated Press* reported in commenting on the settlement: "[in contrast to the Broadcom settlement] the Securities and Exchange Commission has met fierce resistance to a proposal just to allow shareholder nominations under very limited circumstances." This type of corporate governance relief has only been achieved in a handful of shareholder derivative actions.

*Barry v. Cotsakos*, CV 49084 (San Mateo County, CA) (the "Etrade Derivative Litigation"). Mr. Weiser was co-lead counsel in the Etrade Derivative Litigation. Mr. Weiser believes that the Etrade Derivative Litigation is one of the most successful executive compensation cases ever brought against a publicly traded corporation's board of directors. In that case, the plaintiff challenged the payment of excessive compensation awarded to Etrade's then-current Chief Executive Officer. As a result of the settlement of the case, Etrade's Chief Executive Officer returned approximately $25 million to the Company, and he also agreed to forego other valuable financial benefits. The Etrade settlement also provided for sweeping changes to the company's corporate governance practices and the structure of its Board. These measures, and the resulting change in the public's perception of Etrade, were profiled in a September 8, 2003 *Wall Street Journal* article entitled "How One Firm Uses Strict Governance To Fix Its Troubles." Since the time of the Etrade settlement, Etrade has added independent directors to its Board, who have since forced out the company's Chief Executive Officer. In response to these changes, the Company's stock increased more than 300% in the 18 months following the settlement and the "new" Etrade has been the subject of several positive media reports.

*Klotz v. Parfet, et al.*, Case No. 03-06483-CK (In the Circuit Court of Jackson County, Michigan) (the "CMS Derivative Litigation"). Mr. Weiser was co-lead counsel in the CMS Derivative Litigation. In that case, plaintiff alleged that CMS' Board of Directors failed to develop and implement adequate corporate governance practices and internal controls. Plaintiff alleged that the Board's internal control failures caused the Company to suffer enormous damages to its reputation and prestige. In settling the CMS Derivative Litigation, the Weiser Firm was able to recover $12 million for the Company, and the Board agreed to adopt what one commentator called "some of the most substantial corporate governance reforms" ever undertaken by a publicly traded corporation.

*Gebhardt v. Allumbaugh, et al.*, Case No. 2002-13602 (Harris County, Texas)(the "El Paso Derivative Litigation"). Mr. Weiser was lead counsel in the El Paso Derivative Litigation. This action centered on the Company's alleged anti-competitive conduct in

California during that the state's energy crisis of 2001-02. In addition to making sweeping changes to the Board's structure and the Company's corporate governance practices, Mr. Weiser was able to secure a $16.75 million recovery for the Company. Mr. Weiser believes that the El Paso Derivative Litigation is either the first or second largest derivative settlement in Texas history.

*Eliasoph v. Johnson*, C.A. No. 05–CVS-3698 (North Carolina General Civil Litigation Court)(the "SPX Derivative Litigation"). Mr. Weiser was lead counsel in the SPX Derivative Litigation. Like the Etrade Derivative Litigation, Mr. Weiser believes that the SPX Derivative Litigation is among the most successful executive compensation cases ever brought against a publicly traded corporation's board of directors. In this case, the plaintiff challenged the fairness of the Company's entire executive compensation structure. In connection with the settlement of the SPX action, the Company's board of directors agreed to adopt a new executive compensation plan which was designed in part, with plaintiff's counsel and her expert. The new compensation plan more closely aligned shareholder and management interests and it was estimated that the new plan would save the Company at least $25 million.

*In Re Staples, Inc. Shareholders Litigation*, 792 A.2d 934 (Del. Ch. June 5, 2001). Mr. Weiser was one of three lead counsel in the Staples action. In that case, plaintiffs secured a financial benefit worth at least $12 million to Staples by winning an injunction preventing Staples from holding a shareholder vote on an improperly disclosed recapitalization plan that would have unfairly benefitted Staples' insiders at the expense of the Company and its stockholders.

*Wanstrath v. Doctor R. Crants, et al.*, C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999)(the "Prison Realty Derivative Litigation"). In the Prison Realty Derivative Litigation, plaintiff challenged the transfer of assets from Prison Realty to a private entity owned and controlled by several of the Company's top executives. Plaintiffs also alleged that the proposed transaction, would have crippled the Company's liquidity. Plaintiffs were able to halt the planned transaction, which prevented the Company from suffering a $120 million loss, which was a highly significant victory in light of the Company's then-precarious financial position. As a result of the settlement of the case, the members of the Company's top management were removed, the composition of the Board of Directors was significantly altered and important corporate governance provisions were also put in place to prevent future abuse. Notably, all of these corporate benefits occurred at a time when the Company was facing near-certain bankruptcy which would have wiped out shareholders' equity in the Company. Because the Company had adopted these significant changes, it was able to renegotiate the terms of its credit facility with its lenders and it never had to file for bankruptcy protection. Since the time the case was settled, the Company's new management has led the Company, now-named Corrections Corporation of America, to profitability, and the price of the common stock increased more than 400% in the two years following the settlement.

*Huscher v. Curley, et. al.*, No. 00 Civ. 21379 (Mich. Cir. Ct., 2000) (the "Sotheby's

Derivative Litigation"). In the Sotheby's Derivative Litigation, plaintiffs alleged that the Company's Chief Executive Officer had entered into illegal price-fixing agreements with the Company's leading purported competitor, Christie's International PLC. As a result of the settlement of this case, the Company received the return of certain monetary benefits which had been provided to the Chief Executive Officer that were worth approximately $12 million to the Company. In addition, significant changes in the Company's top management and Board of Directors were achieved in conjunction with the settlement of the case.

Mr. Weiser has been a frequent commentator on corporate governance matters and has lectured on corporate governance issues in both this country and abroad.

## **DEBRA S. GOODMAN**

Ms. Goodman earned her Bachelor of Arts degree in International Studies from The George Washington University. She earned her Juris Doctor degree from The Benjamin N. Cardozo School of Yeshiva University. While attending law school, she worked for the Department of Justice and the New York Attorney General's Office.

Ms. Goodman began her practice of law in Philadelphia where she was a Partner at Margolis Edelstein, a large insurance defense firm. She concentrated her litigation practice on mass tort litigation, handling numerous trials. At The Weiser Law Firm, Ms. Goodman is involved in all aspects of the firm's practice, including securities fraud, shareholder class and derivative actions and antitrust litigation. Ms. Goodman is licensed to practice law in Pennsylvania state courts as well as the United States District Court for the Eastern District of Pennsylvania. Ms. Goodman has been or is a member of the American Bar Association, the Pennsylvania Bar Association, and the Philadelphia Bar Association. She received her AV rating from Martindale-Hubbell in 2003. She is also President of Settlement Music School and one of the founding members of the Pennsylvania Bar Association's Commission on Women in the Profession.

## **BRETT D. STECKER**

Mr. Stecker is a graduate of Franklin & Marshall College and of Villanova University School of Law. While in college, Mr. Stecker earned a B.A. in Government and served as a legislative intern for United States Senator Alfonse M. D'Amato. While in law school, Mr. Stecker served as an Executive Member of the Moot Court Board and represented Villanova in national competitions. Upon graduation from law school, Mr. Stecker was an associate with the Litigation Department of Blank Rome LLP in Philadelphia, PA. After two years at that firm, Mr. Stecker moved to Weir & Partners, LLP, a boutique commercial litigation firm in Philadelphia, where he focused his practice on banking litigation in cases dealing with consumer lending, check fraud, and the enforcement of guarantee and other security agreements. At The Weiser Law Firm, Mr. Stecker concentrates his practice on shareholder derivative and ERISA litigation.

## **SANDRA G. SMITH**

Ms. Smith is a graduate of St. Joseph's University, with a Bachelor's degree in history, and earned her J.D. Degree from Temple University School of Law. While in law school, she served as the Editor-in-Chief of the Temple Environmental Law & Technology Journal. Ms. Smith is licensed to practice law in Pennsylvania state courts as well as the United States District Court for the Eastern District of Pennsylvania. Prior to joining The Weiser Law Firm, Ms. Smith practiced at Schiffrin, Barroway, Topaz & Kessler, LLP, primarily concentrating on Mergers and Acquisitions litigation. Prior to that, she practiced at Berger & Montague, P.C. concentrating her practice on federal securities class action litigation. At The Weiser Law Firm, Ms. Smith concentrates her practice on shareholder derivative and class action litigation.